UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

TERRITA STENNIS,

    Plaintiff,

v.

WILLIAM ARMSTRONG, et al.,

    Defendants.

No. 18 CV 7846

Judge Manish S. Shah

**MEMORANDUM OPINION AND ORDER**

Plaintiff Territa Stennis worked as an education specialist for U.S. Veterans Affairs personnel at the Hines VA Medical Center. After Stennis denied a reimbursement-related request from William Armstrong, a VA police officer, Armstrong arrested Stennis for unpaid VA parking tickets. In the course of that arrest, Armstrong dislodged a breast implant in Stennis's chest, and she needed surgery to fix it. Stennis brings *Bivens* claims against Armstrong and two other VA officers in their individual capacities, and sues the United States under the Federal Tort Claims Act. The government moves to dismiss Stennis's FTCA claims on the ground that the Federal Employees' Compensation Act covers Stennis's injury, precluding Stennis from suing under the FTCA and depriving this court of subject-matter jurisdiction. In the alternative, the government asks the court to stay the case pending a determination from the Department of Labor that the FECA does or does not cover Stennis's injury. The government's motion is granted in part, denied in part.

The motion to dismiss is denied. The case is stayed as to Counts IV–VII (the counts against the United States).

I.   **Legal Standards**

A motion to dismiss under Federal Rule of Civil Procedure Rule 12(b)(1) tests the jurisdictional sufficiency of the complaint. *Bultasa Buddhist Temple of Chi. v. Nielsen*, 878 F.3d 570, 573 (7th Cir. 2017). In ruling on a 12(b)(1) motion, I accept all well-pleaded factual allegations as true and draw reasonable inferences in favor of the plaintiff. *Id.*

II.  **Background**

Plaintiff Territa Stennis worked as an education specialist at the Hines VA Medical Center. [4] ¶¶ 6, 10 (Amended Complaint).[1] Defendant William Armstrong, a VA police officer, applied, and was approved for, a $900 reimbursement for a class he was interested in taking at Northwestern. [4] ¶¶ 7, 11. Armstrong later asked Stennis to change his reimbursement paperwork from an educational request to a travel request, and Stennis, after checking with a supervisor, refused. [4] ¶ 12. Stennis told Armstrong that she was denying his request, and Armstrong stormed out of Stennis's office and slammed the door. [4] ¶ 13.

About eight months later, Armstrong emailed Stennis to tell her that she had four outstanding VA parking tickets. [4] ¶ 14. Stennis responded that she had filed for bankruptcy due to receiving breast cancer treatment, and the tickets were stayed,

---

[1] Bracketed numbers refer to entries on the district court docket.

with the VA as a creditor. [4] ¶ 14. Over the next few months, Stennis exchanged multiple emails with Armstrong and his supervisor, Chief Gary Marsh, to explain that the tickets were stayed. [4] ¶¶ 8, 14. Armstrong sent a summons for the tickets to Stennis's old address. [4] ¶ 15.

About a year after Stennis denied Armstrong's reimbursement request, Armstrong came to Stennis's office and told her that he was taking her to "federal prison." [4] ¶ 16. He shut Stennis's office door so another coworker couldn't enter, and kept Stennis in her office for 10 minutes, during which time she contacted her bankruptcy attorney. [4] ¶ 16. Armstrong, meanwhile, called Officer Amina Sathout, who arrived at Stennis's office. [4] ¶ 17. Armstrong then pulled Stennis out of her office and escorted her to a police car, where he put two sets of handcuffs on her, his own and Sathout's. [4] ¶¶ 17–18.

Stennis began experiencing shortness of breath and chest pain, and told Armstrong that she had two chest implants due to a double mastectomy. [4] ¶¶ 19, 22. While they were in transport, Stennis told Armstrong and Sathout that she was in "excruciating pain," but they ignored her. [4] ¶ 25. Armstrong brought Stennis to federal district court in Chicago, where a U.S. marshal observed that Stennis needed help and called an ambulance. [4] ¶¶ 25–27. At the hospital, doctors diagnosed Stennis with a chest wall injury and performed surgery on her. [4] ¶ 27. One of Stennis's chest implants had dislodged during the arrest. [4] ¶ 24. Another VA officer told Sathout that Armstrong had arrested Stennis because of the reimbursement issue. [4] ¶ 29.

### III. Analysis

Stennis brings claims of excessive force, deliberate indifference to medical needs, and retaliation against Armstrong, Marsh, and Sathout under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 397 (1971). [4] ¶¶ 33–55.[2] She also alleges four claims against the United States under the FTCA: intentional infliction of emotional distress, abuse of process, negligence, and failure to properly supervise and discipline. [4] ¶¶ 56–74.

The government moves to dismiss the four claims against the United States. It argues that the court lacks subject-matter jurisdiction because the FECA covers Stennis's injury. In the alternative, the government moves to stay the case to allow the Department of Labor to decide whether the FECA covers Stennis's claim. I agree with the government, and stay Counts IV–VII.

The FECA provides the exclusive remedy for a federal employee who sustains a work-related injury. *Lockheed Aircraft Corp. v. United States*, 460 U.S. 190, 193–94 (1983); *Gustafson v. Adkins*, 803 F.3d 883, 890 (7th Cir. 2015); *see* 5 U.S.C. § 8116(c) ("The liability of the United States … under this subchapter … with respect to the injury or death of an employee is exclusive."). Congress designed the FECA to "protect the Government" from suits under statutes that waive sovereign immunity, such as the FTCA. *Lockheed*, 460 U.S. at 193–94. The Secretary of Labor has the power to decide questions arising under the FECA, and courts cannot review the Secretary's

---

[2] I dismissed Count III, retaliation, for failing to state a *Bivens* claim. [37].

4

answers. *Ezekiel v. Michel*, 66 F.3d 894, 898 (7th Cir. 1995) (citing 5 U.S.C. §§ 8128(b), 8145). Thus, if the FECA covers an injury, a federal court lacks subject-matter jurisdiction to adjudicate the claim. *Id.*; *see also Fuqua v. U.S. Postal Serv.*, 607 Fed. App'x 570, 571–72 (7th Cir. 2015) (noting that if the FECA covers an injury, "a plaintiff may not state a claim under the FTCA based upon that injury").

The FECA covers injuries sustained "while in the performance of [an employee's] duty." 5 U.S.C. § 8102(a). If an injured federal employee sues the United States under the FTCA for a work-related injury, but has not submitted a FECA claim, the court must determine whether there is a "substantial question of FECA coverage." *Mathirampuzha v. Potter*, 548 F.3d 70, 81 (2d Cir. 2008); *Noble v. United States*, 216 F.3d 1229, 1235 (11th Cir. 2000). If a substantial question exists, the district court must "stay the proceedings, hold the claim in abeyance, or otherwise maintain the case on the court's inactive docket" so that the plaintiff can file a FECA claim and learn whether the FECA covers her injury. *Mathirampuzha*, 548 F.3d at 84; *Noble*, 216 F.3d at 1235; *see also Fuqua*, 607 Fed. App'x at 572 ("When it is unclear whether the FECA covers a particular injury, federal courts defer to the Secretary of Labor, staying litigation until the Secretary makes a final determination regarding coverage.").

A substantial question of FECA coverage exists "unless the court determines 'as a matter of law that, viewing all of the circumstances, the Secretary could not find FECA coverage of' the alleged injury." *Noble*, 216 F.3d at 1235 (quoting *Concordia v. U.S. Postal Serv.*, 581 F.2d 439, 442–44 (5th Cir. 1978)). Put another way, a

substantial question exists unless it is "certain" that the Secretary would "find no coverage." *White v. United States*, 143 F.3d 232, 234 (5th Cir. 1998); *Bruni v. United States*, 964 F.2d 76, 79 (1st Cir. 1992); *see Mathirampuzha*, 548 F.3d at 81.

Here, a substantial question exists as to whether Stennis's alleged injury occurred in the performance of her duties as a VA employee. Stennis's job was to approve or deny educational reimbursements, and her conflict with Armstrong stemmed from Stennis's refusal to alter Armstrong's reimbursement request, a decision that Stennis made in the course of performing her job duties. Armstrong arrested Stennis for her unpaid VA parking tickets, which she likely received for improperly parking at her place of employment while working inside the building. In the months leading up to the arrest, Stennis emailed (presumably over work email) with Armstrong and another coworker, Marsh, about the parking tickets. On the day of the actual injury, Armstrong detained Stennis in her office, on a workday. He escorted her through the VA medical center (her workplace) in view of other VA employees (her coworkers). Given that the dispute implicated Stennis's discretion in performing her job, and that Armstrong detained and arrested Stennis on a workday, at her job, I cannot say with certainty that her injury was not work-related. *See Fuqua*, 607 Fed. App'x at 572 (where plaintiff submitted evidence that the DOL "*may* find his injuries compensable," staying litigation to allow "the administrative scheme established under the FECA … to run its course and ascertain coverage before litigation proceeds in federal court").

And, courts have found that a substantial question existed as to whether the FECA applied in circumstances similar to these, when one federal employee detained or arrested another at work. *See, e.g.*, *Luczyszyn v. General Servs. Admin.*, 569 F.Supp. 306 (E.D. Pa. 1983) (finding substantial question existed as to FECA coverage where federal officers detained federal employee "on federal property," "adjacent to the employee's work place, during normal working hours"); *see also Horton v. United States*, 144 Fed. App'x 931, 932 (3d Cir. 2005) (upholding dismissal of FTCA claims where military police detained plaintiff on base during his lunch break because plaintiff "must first seek relief under the FECA"); *cf. Ruff v. Runyon*, 60 F.Supp.2d 738, 745–46 (N.D. Ohio 1999) (finding no substantial question that FECA coverage existed where "all of the activity leading to arrest and indictment occurred off the work site and outside work hours"). What's more, the Department of Labor has found that FECA covered injuries sustained when one federal employee arrested another at work, further undermining Stennis's claim that the FECA could not apply to her injuries. *See Hightower v. United States*, 205 F.Supp.2d 146, 152 (S.D.N.Y. 2002) (declining review of secretary's decision that plaintiff's injuries "occurred during the course of his employment" where federal officer arrested plaintiff in the parking lot of a VA hospital).

Stennis argues that the FECA will not cover her claim because her injuries do not fall under the FECA's statutory definition of a work-related injury. But I do not need to decide whether FECA actually applies, only whether it conceivably could apply. And *Gustafson*, 803 F.3d 883, does not help Stennis. That case involved *Bivens*

7

claims against individual VA officers, not FTCA claims against the United States. In fact, the district court initially stayed the case "pending the Secretary of Labor's review" of the plaintiff's injuries. *Gustafson v. Thomas*, No. 11 C 5852, 2012 WL 1866407, at *4 (N.D. Ill. May 22, 2012) (granting the United States' motion to stay). Once the Secretary determined that FECA covered the plaintiff's injuries, the district court dismissed the United States as a defendant and allowed only the *Bivens* claims to proceed. *Gustafson*, 803 F.3d at 887. So *Gustafson* supports the government's argument, not Stennis's.

If the Secretary decides that the FECA does not cover Stennis's claims, then she may pursue FTCA claims against the United States. A stay, rather than outright dismissal, will efficiently preserve Stennis's ability to resume litigating the FTCA claims.

## IV. Conclusion

The United States' motion to dismiss or in the alternative to stay [19] is denied in part, granted in part. The FTCA claims are not dismissed, but stayed pending review by the Secretary of Labor. A status hearing is set for December 18, 2019, at 9:30 a.m. to discuss whether discovery should proceed on the *Bivens* claims.

ENTER:

Date: November 26, 2019

Manish S. Shah
U.S. District Judge